UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                                        Case No. 12-31448-WRS
                                                             Chapter 7
ALEXANDRA ELIZABETH
ACOSTA-CONNIFF,

      Debtor

ALEXANDRA ELIZABETH
ACOSTA-CONNIFF,

      Plaintiff                                      Adv. Pro. No. 13-3059-WRS

  v.

ECMC,

      Defendant

## MEMORANDUM DECISION

This Adversary Proceeding came before the Court for trial on January 26, 2015. Plaintiff Alexandra Elizabeth-Acosta Conniff represented herself, pro se, and Defendant Educational Credit Management Corporation was present by counsel Margaret H. Manuel. The question presented is whether Conniff's indebtedness for a student loan is excepted from discharge pursuant to 11 U.S.C. § 523(a)(8). For the reasons set forth below, the Court determines that the debt is not excepted from discharge and therefore it is discharged.

## I. FACTS

Conniff filed a petition in bankruptcy pursuant to Chapter 7 of the Bankruptcy Code on June 13, 2012. (Case No. 12-31448, Doc. 1). A discharge was granted, pursuant to 11 U.S.C.

§ 727, on January 31, 2013. (12-31448, Doc. 31). Conniff filed a complaint on March 21, 2013, seeking a determination that her indebtedness to ECMC for a student loan is not excepted from discharge pursuant to 11 U.S.C. § 523(a)(8). Conniff owes ECMC $112,000. It was not disputed at trial that this indebtedness is for student loans within the meaning of 11 U.S.C. § 523(a)(8)(A)(i). The only issue is whether requiring Conniff to pay the indebtedness would impose an "undue hardship" on her and her dependents, within the meaning of § 523(a)(8).

Conniff is a 44-year old single mother with two sons. She earned a Ph.D. from Auburn and teaches high school in the Eufaula, Alabama, school system. At the time she filed her petition in bankruptcy she had take home pay of $2,950 per month plus an additional $500 per month in child support. (12-31448, Doc. 1, Schedule I).[1] Neither party offered evidence as to the monthly payment required to amortize the indebtedness at the current interest rate; however, based upon the evidence offered, the Court calculates that the monthly payment would be $915.00 per month.[2] Looking at the information contained on Schedules I and J and the

---

[1] Copies of Schedules were offered into evidence by ECMC.

[2] This assumes a principal amount of $112,000, an interest rate of 5.5% and a term of 15 years. See, Rule 201(b)(2), Federal Rules of Evidence. The Court finds that, given Conniff's age and health, it would not be reasonable to assume a useful working life longer than this. The 5.5% interest figure is an average of Conniff's outstanding loans to ECMC. The Court bears in mind that Conniff, while well-educated, is not a lawyer and her proof at trial was at times uneven. Ideally, this $915 per month figure should have been calculated prior to trial and offered into evidence at trial, giving ECMC a chance to respond. On the other hand, ECMC was represented by counsel and had available to them specialists who could have made such a calculation. ECMC is a large institution specializing in collecting student loans. It is well aware of the of the three-part Brunner test. ECMC made a tactical decision to advance its ICRP argument without meeting head-on Conniff's argument that she could not pay the entire loan over a reasonable period of time. There is no fundamental unfairness to ECMC here for the Court to fill this gap in Conniff's proof.

2

Case 13-03059    Doc 62    Filed 03/25/15    Entered 03/25/15 16:07:12    Desc Main
Document      Page 2 of 14

evidence offered at trial, it is readily apparent that Conniff could not make that payment and support herself and her children with a minimal standard of living if forced to repay the loan.

ECMC argues that Conniff's monthly take home pay is higher based upon its assumption that her contribution to her teacher's pension is voluntary. Conniff testified that she is required to make the contribution to her pension as required by the Plan. Moreover, participation in the Plan is mandatory for full-time teachers. Conniff offered a copy of the "Teachers Retirement System of Alabama, Summary Plan Description," into evidence. (Plaintiff's Exhibit A). The Summary states that participation in the Plan is mandatory for non-temporary employees who work at least half-time. The evidence established at trial that Conniff was a full-time employee. Conniff's mandatory contribution is $344 per month to which she voluntarily adds an additional $220 per month, for a total deduction of $564 per month. ECMC's contention–that Conniff could create additional disposable income from which she could repay her loan is correct–but only to the extent of her $220 per month voluntary pension plan contribution.

Conniff testified at trial that she had been working in the Eufaula School system for more than 10 years and that she expected to continue working there into the foreseeable future. Conniff testified that she does not expect any significant changes in her level of compensation into the future. Based upon Conniff's testimony and the Court's general knowledge of teachers' level of pay (derived from thousands of bankruptcy cases per year filed in this Court by debtors–some of which are filed by teachers), the Court finds that Conniff's pay is not likely to significantly increase in the near future.

The witness for ECMC testified that their records show that Conniff has made, over the years, payments exceeding $9,000. Moreover, Conniff testified that because she worked in

special education in a rural area, she would qualify for an additional credit of $17,500 for every five years she worked. Conniff testified that she has made application for this credit three times and been denied every time. Conniff testified that she was told by a representative of the loan servicer that she became ineligible for the credit because she consolidated a qualifying loan with a nonqualifying loan. The Court accepts Conniff's testimony on this point as accurate. However, the Court does not–and for these purposes need not–conclude that the information provided was correct. Rather, Conniff's testimony is accepted for the purpose of finding that she has made a good faith effort to repay the loan.

It was further established at trial that Conniff was, and had been for several years, in a student loan deferral status. That is, Conniff has made application to ECMC for a loan deferral. Based upon her income and family situation, ECMC has deferred the loan for some time. When a student loan is in a deferral status, the debtor has no current obligation to make payments but there is no principal forgiveness and interest continues to accumulate on the entire indebtedness. The Court finds that this evidence of Conniff's status of being in a loan deferral provides further support for her claim that she cannot pay the debt and maintain a minimal standard of living without suffering an undue hardship and in addition, is evidence of good faith.

Conniff appeared in court in person and without counsel. She was subject to cross examination by counsel for ECMC. The Court finds that Conniff's testimony was forthright and credible. In conclusion, the Court finds that Conniff has shown, by a preponderance of the evidence, that she will suffer an undue hardship if she is required to repay her student loan.

## II. LAW

### A. Jurisdiction

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I). This is a final order.

### B. Student Loan Dischargeability

#### 1. Applicable Code Provisions

Section 727(b) of Title 11, United States Code, provides in part, as follows:

> Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter.

The exceptions to discharge are contained in Section 523. The exception pertinent here is Section 523(a)(8), which provides as follows:

> unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for--
>
> (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or

5

> (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
>
> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual.

This undue hardship provision is actually an exception to an exception. That is, the general state of things is that debts are discharged unless there is an exception. Student loans are such an exception, but there is an exception to the exception–when there is an undue hardship. To put the matter directly, debts for student loans do not discharge unless the debtor can show that it would impose an undue hardship if she is required to repay the loans.

Creditors bear the initial burden to show that a debt is excepted from discharge and must prove their case by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 288-89, 111 S.Ct. 654, 660-61 (1991). It is not disputed here that the debt in question is a student loan within the meaning of § 523(a)(8). As for the exception to an exception, Conniff must bear the burden to prove, by a preponderance of the evidence, that she would suffer an undue hardship if required to pay the loan. Wright v. RBS Citizens Bank (In re Wright), 2014 WL 1330276, *3 (Bankr. N.D. Ala. Apr. 2, 2014).

### 2. History of Student Loan Dischargeability

Some historical perspective is appropriate here. The Constitution of the United States authorized Congress to establish "uniform laws on the subject of bankruptcies throughout the United States." Article I, § 8, Cl. 4. The first exception to a debtor's discharge for student loans

6

did not become effective until 1977 when Congress enacted the "Education Amendments of 1976." Pub. L. 94-842.[3] For bankruptcy cases filed on or after September 30, 1977, student loan debts which were less than five years old did not discharge unless it was determined "that payment from future income or other wealth will impose an undue hardship on the debtor or his dependents." Pub. L. 94-842, Sec. 439; see also, In re Fonzo, 1 B.R. 722 (Bankr. S.D.N.Y. 1979)(holding that requiring the debtor to repay his student loan, in the amount of $1,000, would impose an undue hardship; citing the exception to discharge which was then codified at 20 U.S.C. § 1087-3(a)).

In 1990, Congress extended the period of nondischargeability from 5 to 7 years. Pub. L. 101-647. In 1998, Congress eliminated the time based restriction on the nondischargeability of student loans, but retained the exception for undue hardship. Pub. L. 105-244. This history is significant for two reasons. First, one should bear in mind that until 1998, student loans were discharged after a period of, at most, 7 years. The unlimited duration of the period of nondischargeability is of relatively recent origin. Second, many of the landmark cases, such as Brunner, discussed in detail in Part II(B)(3), infra, were handed down prior to 1998. At the time the Second Circuit handed down Brunner, student loans were dischargeable after they were 5 years old. A denial of discharge of a student loan then was not a life sentence of nondischargeability, as it is now. Moreover, both the number of debtors who have student loans and the amount of their student loans is significantly more now than in prior years.[4] See,

---

[3] For a good discussion of the history of bankruptcy laws see. Charles Jordan Tabb, The History of the Bankruptcy Laws in the United States, 3 Am. Bankr. Inst. L. Rev., 5 (1995).

[4] Daniel A. Austin, The Indentured Generation: Bankruptcy and Student Loan Debt, 53 Santa Clara L. Rev. 329 (2013). Austin reports, citing an article in USA Today dated October

7

Johnson v. Edinboro State College, 728 F.2d 163 (3rd Cir. 1984)(holding that student loans in the amount of $1,700 are not dischargeable); Andrews v. South Dakota Student Loan Asstnce. Corp. (In re Andrews), 661 F.2d 702 (8th Cir. 1981)(reversing judgment of bankruptcy court discharging $2,500 student loan and remanding for further proceedings); Moorman v. Commonwealth of Ky. Higher Educ. Asstnce. Auth. (In re Moorman), 44 B.R. 135 (Bankr. W.D. Ky. 1984)(holding that stress of repaying $3,700 student loan not an undue hardship); Betz v. N.Y. State Higher Educ. Svcs. Corp. (In re Betz), 31 B.R. 565 (Bankr. W.D.N.Y. 1983)(holding that student loan indebtedness totaling $3,400 not an undue hardship). Therefore, the exception for "undue hardship" should be read in the proper light. That is, what one may consider to be an undue hardship where a debtor is required to pay a debt of a few thousand dollars, which may ultimately be discharged in five or seven years, may be quite different than what one may consider to be an undue hardship of a debt in the amount of $100,000 or more, which will not discharge for the life of the debtor.

### 3. Undue Hardship

The term "undue hardship" in § 523(a)(8) is not defined in the Bankruptcy Code. The landmark case on the question of what the term "undue hardship" means was handed down by the Second Circuit in 1987. Brunner v. N.Y. State Higher Educ. Servs. Corp., 831 F.2d 395.

---

19, 2011, that 37 million Americans owe more than $1 trillion dollars in student loans. Id. at 330.

8

Case 13-03059    Doc 62    Filed 03/25/15    Entered 03/25/15 16:07:12    Desc Main
                           Document    Page 8 of 14

The Second Circuit in Brunner adopted a three part test which has been cited in many reported cases and adopted as a standard by Eleventh Circuit.

> 1. That the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependent if forced to repay the loans;
>
> 2. That additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and
>
> 3. That the debtor had made good faith efforts to repay the loans.

Id. at 396.

The United States Court of Appeals for the Eleventh Circuit first adopted the "Brunner" test in Helman Ins. Corp. of Am. v. Cox (In re Cox), 338 F.3d 1238 (11th Cir. 2003). In another case where the Eleventh Circuit used the Brunner test, it rejected an argument advanced by ECMC that would have required debtors to support their claims of "additional circumstances" with independent medical evidence. Educ. Credit Mgmt. Corp. v. Mosley (In re Mosley), 494 F.3d 1320, 1325-27 (11th Cir. 2007). The Eleventh Circuit has made clear that it has adopted Brunner as a guide to assist in the determination of whether a given debtor meets the "undue hardship" test.

Further guidance in defining "undue hardship" has been provided by the District Court where it stated that "a 'minimal standard of living' is not such that debtor must live a life of abject poverty, but it does require more than a showing of tight finances.'" McLaney v. Ky. Higher Educ. Assistance Auth. (In re McLaney), 375 B.R. 666, 674 (M.D. Ala. 2007) . In McLaney, the District Court affirmed this Court in a case where KHEAA asserted that the

Brunner test was not met because the debtor had cable television and a cell phone. McLaney, 314 B.R. 228 (Bankr. M.D. Ala. 2004)(Williams, B.J.), aff'd 375 B.R. 666 (M.D. Ala. 2007). The same applies here. Conniff does not have any child care expenses but finds a cell phone useful, if not essential, in keeping track of her two sons. Moreover, she does not spend much on entertainment except that she does have cable television. As the District Court held in McLaney, that such expenses may be considered, they did not necessary disqualify a debtor for a discharge of her student loan. McLaney, 375 B.R. at 674; see also, Fields v. Educ. Credit Mgmt. Corp. (In re Fields), 2012 WL 3235844, *5 (Bankr. N.D. Ala. Order entered 3/23/2012)(stating that people must have the ability to pay for some small diversion or source of recreation, even if it is just watching television or keeping a pet); Ivory v. United States (In re Ivory), 269 B.R. 890 (Bankr. N.D. Ala. 2001)(to same effect).

In Brunner, the debtor filed bankruptcy within one month of the time her first payment came due. Brunner 831 F.2d at 397. She had no dependants, no health issues and no period of unemployment. Id. The debtor's situation in Brunner contrasts sharply with Conniff's situation because Conniff has struggled for years to pay her student loans, only to see the balance continue to grow. The evil that the exception to discharge for student loans was meant to remedy were situation, such as that seen in Brunner, where discharge was sought shortly after graduation.

10

Case 13-03059   Doc 62   Filed 03/25/15   Entered 03/25/15 16:07:12   Desc Main
Document      Page 10 of 14

### 4. Application of the Brunner Three-Part Test

#### a. Minimal standard of living

When applying the Brunner standards to a specific case one should bear in mind the plain language of § 523(a)(8). "The statutory language is that a discharge is possible when payment would cause an 'undue hardship.' It is important not to allow judicial glosses, such as the language in ... Brunner, to supersede the statute itself." Krieger v. Educational Credit Mgmt Corp., 713 F.3d 882, 884 (7th Cir. 2013); see also, Wolfe v. U.S. Dept. of Educ. (In re Wolfe), 501 B.R. 426, 434 (Bankr. M.D. Fla. 2013). Addressing the Brunner standards one at a time, the first is " that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependent if forced to repay the loans." Brunner, 831 F.2d at 396.

As calculated in Part I, supra, it would require a payment of $915 per month to pay off the student loan assuming a 15-year amortization period. Conniff's bankruptcy filings show little ability to pay.[5] Conniff could eliminate the voluntary pension contribution and perhaps squeeze a couple of hundred more out of her budget, which would leave her considerably short of meeting a required payment of $915 per month. To put the matter differently, looking at Conniff's budget, it is apparent that she could not pay $915 per month and maintain a minimal standard of living for herself and her children.

---

[5] In Schedule I, Conniff reports monthly income of $3,487, including child support. She reports $3,487 in expenses on Schedule J, for a monthly deficit of $33 per month, which Conniff testifies she meets with assistance from her parents.

Case 13-03059    Doc 62    Filed 03/25/15    Entered 03/25/15 16:07:12    Desc Main
Document      Page 11 of 14

ECMC advances the argument, that Conniff could apply for an income contingent repayment plan. At trial, ECMC argued that under such a plan Conniff could pay $346 per month for 120 months and that the rest would be forgiven. With careful budgeting, ECMC argues that Conniff could make such a payment and ultimately satisfy her loan. Arguments such as this have been rejected both by the Eleventh Circuit and by this Court. Mosley, 494 F.3d at 1327; McLaney, 375 B.R. at 677; Al-Riyami v. U.S. Dept. of Educ. (In re Al-Riyami), 2014 WL 2800815, *4 (Bankr. M.D. Ala. Order entered 1/6/2014)(Williams, B.J.); see also, Bumps v. Wells Fargo Ed. Fin. Svcs., (In re Bumps), 2014 WL 185336, *3 (Bankr. M.D. Fla. Jan. 15, 2014)(holding that the failure to enroll in an income contingent repayment plan does not preclude a finding that the loan imposes an undue hardship). The availability of an income contingent repayment plan does not preclude the possibility of a discharge where, as here, the undue hardship requirement is met.

The Court's calculation is that it would take a payment of $915 per month for 15 years to pay the loan in question. See, Part I, supra. Considering Conniff's income, her family situation and her monthly expenses, the Court concludes that she could not make such a payment and maintain a minimal standard of living. While one may quibble about expenses such as cable television, the fact of the matter is that Conniff could not reasonably be expected to support herself and her children at a minimal standard of living if required to pay the student loan.

### b. Additional circumstances

The second Brunner factor is that "additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student

loans." Brunner, 831 F.2d at 396. This was established by the evidence offered at trial. Based upon Conniff's testimony, there is nothing in her circumstances which is likely to change in the future. To be sure, her two sons will grow up and eventually become emancipated, reducing her living expenses somewhat. However, her youngest son was 11 at the time she filed her petition in bankruptcy, so the time of emancipation will be some years off. Moreover, when her sons become emancipated, her child support will be terminated, likely offsetting much of the savings from the emancipation of her children. The Court concludes that additional circumstances exist which make Conniff's current state of affairs likely to persist for a significant portion of the student loan.

### c. Good faith

The third Brunner requirement is good faith. That is, the debtor must make a good faith effort to repay her student loans. Id. In the case at bar, good faith is established by actual payments made by Conniff over a period of years as well as communication with the creditor in making application for a loan deferral and teaching school in a rural area, which would have qualified her for $17,500 in credit for every 5 years that she taught school. Conniff in good faith believed that she was entitled to credit and her efforts, both in teaching school in a rural area and payments actually made, are evidence of good faith.

### III. CONCLUSION

Conniff is indebted to ECMC for student loans in the amount of $112,000. Based upon her circumstances, she cannot maintain even a minimal standard of living if she is required to

13

repay the loan. It was established that her circumstances will persist into the forseeable future. Moreover, Conniff has shown that she has made a good faith effort to repay her loan. Therefore, requiring Conniff to repay the loan would impose an undue hardship on her and this renders the loan discharged.

      Done this 25th day of March, 2015.

                                       United States Bankruptcy Judge

c: Alexandra Elizabeth Acosta-Conniff
   Margaret H. Manuel, Attorney for Defendant