IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ECMC, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:15-CV-220-WKW |
| | ) | [WO] |
| ALEXANDRA ELIZABETH | ) | |
| ACOSTA-CONNIFF, | ) | |
| | ) | |
| Appellee. | ) | |

**MEMORANDUM OPINION AND ORDER**

The bankruptcy court determined that repayment of Appellee Alexandra Elizabeth Acosta-Conniff's ("Conniff") student loan debt would result in undue hardship under 11 U.S.C. § 523(a)(8), and it discharged the $112,00 debt. Appellant ECMC appeals the bankruptcy court's decision. It asserts that the bankruptcy court erred in finding that Conniff satisfied the Eleventh Circuit's three-part test governing the determination of undue hardship. *See Hemar Ins. Corp. of Am. v. Cox (In re Cox)*, 338 F.3d 1238, 1243 (11th Cir. 2003) (per curiam) (holding that the three-part test established in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395, 396 (2d Cir. 1987) (per curiam), "is the appropriate test for determining 'undue hardship'"). Ultimately this appeal resolves on a single element of that test: Conniff has failed to prove that "'additional circumstances exist indicating that [her] state of affairs is likely to persist for a significant portion of the repayment period of

the student loans,'" as required under *Brunner*'s second element.  *Id.* at 1241 (quoting *Brunner*, 831 F.2d at 396).  Accordingly, the decision of the bankruptcy court is due to be reversed with instructions for the bankruptcy court to enter judgment in favor of ECMC.

## I.  JURISDICTION AND VENUE

This court has jurisdiction to review the Order of the bankruptcy court under 28 U.S.C. § 158(a)(1), which provides district courts with jurisdiction over appeals "from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." Venue is proper because an appeal "shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving."  *Id.* § 158(a).

## II.  BACKGROUND

### A.    Procedural History

Conniff filed a Chapter 7 bankruptcy petition on June 13, 2012.  (Doc. # 1-3, at 1.)  On January 31, 2013, the court granted a discharge in her bankruptcy case pursuant to 11 U.S.C. § 727.  She filed an adversary proceeding on March 21, 2013, seeking the discharge of her student loan debt owed to ECMC, a specialized student loan guarantor under the Federal Family Education Loan Program.  (Doc. # 1-3, at 1–2.)  The bankruptcy court held a bench trial on January 26, 2015, and issued a written opinion on April 8, 2015.  It determined that excepting Conniff's student loan debt

2

from discharge would cause her undue hardship; therefore, the bankruptcy court discharged her debt pursuant to 11 U.S.C. § 523(a)(8).  (Doc. # 1-3, at 1, 14.)

## B.   The Bankruptcy Court's Decision[1]

The following facts include those found by the bankruptcy court expressly in its oral and written pronouncements and implicitly through its adoption of Ms. Conniff's trial testimony.  (*See* Doc. # 2-11, at 77 (The bankruptcy court's oral pronouncement at trial that Conniff has been "forthright and credible" and that it "accepts her testimony"); Doc. # 1-3, at 4 (The bankruptcy court's written decision that "Conniff's testimony was forthright and credible").)  ECMC, for the most part, has not challenged the bankruptcy court's findings of facts, but instead argues that the findings of fact do not support the bankruptcy court's conclusions of law.

At the time of trial, Conniff was a forty-four-year-old single mother of two healthy sons, who were fourteen and sixteen years old.  (Doc. 1-3, at 2; Doc. # 2-11, at 13, 33.)  The bankruptcy court found that Conniff owes ECMC approximately $112,000 as a result of educational loans.  (Doc. # 1-3, at 2.)  These loans have enabled Conniff to earn four degrees from Auburn University: (1) a bachelor of science in chemistry in 1993; (2) a master's degree in learning disabilities in 1997;

---

[1] The appeal record has been supplemented with ECMC's trial exhibits.  (*See* Docs. # 19–20.)

3

(3) a master's degree in educational leadership in 2007; and (4) a Ph.D. in special education in 2007.  (Doc. # 2-11, at 12, 40–41.)

Conniff has been a teacher since 1997.  Presently, she is a full-time public school teacher in Eufaula, Alabama.  Having worked for the Eufaula City Board of Education since 2003, Ms. Conniff has earned tenure.  For the majority of her career, Ms. Conniff has been a special education teacher; however, her health problems, which she describes as adult-onset Type II diabetes and morbid obesity, recently prompted her to seek a lateral transfer from a special education teacher to a secondary science teacher, where the work is less physical.  (Doc. # 2-11, at 9, 12–13, 19.)

Conniff's educational degrees place her at "the top of the pay scale" for her position within her school district.  (Doc. # 2-11, at 19.)  Conniff is unsatisfied with her job to the extent that she says it "does not pay that well" even with the advanced educational degrees.  (Doc. # 2-11, at 19.)  She does not expect to receive significant pay increases in the future; however, she earns annual salary increases when approved by the State of Alabama and also is eligible for step increases in pay every three years.  (Doc. # 2-11, at 26, 34–35.)

Conniff reported her monthly income and expenses on Schedules I and J, and the bankruptcy court relied principally upon those schedules, as supplemented by the trial evidence, to determine Conniff's disposable income.  Conniff earns a monthly

net salary of approximately $2,950[2] and receives approximately $500 a month in child support.   Additionally, on a monthly basis, she incurs around $3,487 in expenses.   Conniff's Schedules I and J reveal a monthly shortfall of $33.[3]   (Doc. # 1-3, at 11 n.5.)   The bankruptcy court determined that Conniff's monthly payment on her $112,000 debt to ECMC would be $915 for fifteen years.[4]   (Doc. # 1-3, at 2.)

After earning her Ph.D. in 2007, Conniff has applied in her school district for higher-paying positions, most recently in 2012, but so far without success.   These positions include assistant principal, principal, special education coordinator, federal programs coordinator, and superintendent.   (Doc. # 2-11, at 18–19, 40.)   Conniff has not applied for jobs outside of her school system.   She maintains that she could lose her seniority and tenure if she obtained employment in another school district. Conniff also has support from family and friends in Eufaula and, for that additional reason, does not feel it is in her best financial interest to leave the area.   (Doc. # 2-11, at 18–19; Doc. # 1-3, at 3.)

---

[2] The bankruptcy court rounded down Conniff's monthly take-home pay from $2,954 to $2,950.   By the time of trial, Conniff had received a bump in her salary based upon across-the-board annual raises, and her monthly gross earnings were $4,950 per month, or $59,400 per year. (Doc. # 2-11, at 26.)

[3] The bankruptcy court's opinion contains a typographical error in note 5.   In her Schedule I, Conniff reported her monthly income as $3,454, not $3,487.

[4] The bankruptcy court calculated the monthly payment based on a fifteen-year term at an interest rate of 5.5%.   The parties accept that calculation on appeal, and, thus, the court does the same.

5

Conniff has been able to earn additional income through extra jobs, including providing language translations for the board of education and working as an adjunct professor in Montgomery, Alabama.  She testified, however, that she incurs additional costs for "gas, childcare, and eating out" and that these additional costs are often more than the additional income earned.  (Doc. # 2-11, at 16.)

Conniff has paid more than $9,000 toward her loans, but the loans have been in a deferral status for several years.  (Doc. # 1-3, at 3–4.)  There is no evidence that she has applied for the Income-Contingent Repayment Plan ("ICRP"), 34 C.F.R. § 685.209, which lowers a debtor's payment in response to hardship based upon a specified formula.

After setting forth its factual findings, the bankruptcy court turned to the governing law.  It recognized that the Eleventh Circuit has adopted the Second Circuit's three-part test in *Brunner* for determinations of undue hardship under § 523(a)(8).  (Doc. # 1-3, at 8–9.)  Under the *Brunner* test, in order to show undue hardship, a debtor must establish:

> "(1) that [he or she] cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans."

*In re Cox*, 338 F.3d at 1241 (quoting *Brunner*, 831 F.2d at 396).  Applying *Brunner*'s three elements to its findings of fact, the bankruptcy court determined that repayment of the student loan debt would cause Conniff "undue hardship" under § 523(a)(8).

First, it concluded that "the information contained on Schedules I and J and the evidence offered at trial" demonstrate that "it is readily apparent that Conniff could not make that [$915] payment and support herself and her children with a minimal standard of living."  (Doc. # 1-3, at 2–3.)  The bankruptcy court did not indicate whether it had determined that all of the Schedule J expenses were reasonable and necessary for the support of Conniff and her two dependent sons. The record is mostly silent as to this fact-bound undertaking.  The bankruptcy court did observe, however, that Conniff "could eliminate the voluntary pension contribution" of $220 per month and "perhaps squeeze a couple of hundred more out of her budget."  (Doc. # 1-3, at 11.)  It also noted that "one may quibble about expenses such as cable television" (Doc. # 1-2, at 12), but it did not make a finding whether this expense, which is listed on Conniff's Schedule J, was reasonable or not.

The bankruptcy court also acknowledged ECMC's trial testimony that Conniff is eligible for the ICRP, and that, under the ICRP, her monthly payment would be $346 for 120 months, at which point the remainder of the loans would be forgiven. (Doc. # 1-3, at 12.)  However, the bankruptcy court used $915 as the benchmark for assessing whether Conniff met *Brunner*'s first element (Doc. # 1-3, at 2) and

concluded that "[t]he availability of an [ICRP] does not preclude the possibility of a discharge where, as here, the undue hardship requirement is met" (Doc. # 1-3, at 12). *See also* Doc. # 1-3, at 11 (opining that, even if "Conniff could eliminate the voluntary pension contribution and perhaps squeeze a couple of hundred more out of her budget," she still would be "considerably short of meeting a required payment of $915 per month").)[5]

Second, at trial, the bankruptcy court orally pronounced that Conniff had satisfied the second *Brunner* element because the "State of Alabama does not pay its teachers very well" and does not "pay much premium for the additional degrees." (Doc. # 2-11, at 78.)  It noted that any significant raise in teachers' pay in Alabama was unlikely for the near future.  In its written opinion, the bankruptcy court observed that, "[b]ased upon Conniff's testimony and the Court's general knowledge of teachers' level of pay (derived from thousands of bankruptcy cases per year filed in this Court by debtors—some of which are filed by teachers), . . . Conniff's pay is not likely to significantly increase in the near future."  (Doc. # 1-3, at 3.)  It concluded that, based upon "the evidence offered at trial," including Conniff's testimony, "there

---

[5] Conniff also testified that she applied three times with a different loan forgiveness program that would have absolved $17,500 of her debt for each five-year consecutive period that she taught special education in a rural area.  She said, however, that her application was denied each time because she had consolidated an eligible loan with an ineligible loan.  (Doc. # 2-11, at 42.)  She did not provide any evidence of these applications or denials.  (Doc. # 2-11, at 45.) Whether she would have been eligible if she had modified her application is unanswered on the bankruptcy court's record.

was nothing in [Conniff's] circumstances which [was] likely to change in the future" (Doc. # 1-3, at 11), and that "much of the [future] savings from the emancipation of her children" would likely be offset by the cessation of child support payments (Doc. # 1-3, at 13).

Third, the bankruptcy court found that Conniff acted in good faith to repay her student loan debt.  It concluded that Conniff demonstrated good faith based upon the "actual payments" she made "over a period of years" and her efforts in applying for partial loan forgiveness under the program for teachers who taught in a rural area for five consecutive years, *see supra* note 5.  (Doc. # 1-3, at 13.)

Based upon its conclusion that Conniff had demonstrated each of the three *Brunner* elements, the bankruptcy court discharged Conniff's debt.  ECMC appeals.

## III.  STANDARD OF REVIEW

The determination of whether the repayment of student loans imposes an "undue hardship" is a mixed question of fact and law.  *Educ. Credit Mgmt. Corp. v. Mosley (In re Mosley)*, 494 F.3d 1320, 1324 (11th Cir. 2007).  The bankruptcy court's legal conclusions are reviewed *de novo*.  *Id.*  The district court must "independently examine the law and draw its own conclusions after applying the law to the facts" and then "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings."  *Ky. Higher Educ. Assistance Auth. v. Norris* (*In re Norris*), 239 B.R. 247, 249 (M.D.

Ala. 1999) (quoting *Prestwood v. United States (In re Prestwood)*, 185 B.R. 358, 360 (M.D. Ala. 1995), and Fed. R. Bank. P. 8013 (internal quotation marks omitted)). The factual findings of the bankruptcy court are reviewed for clear error.  *In re Mosley*, 494 F.3d at 1324.  A finding of fact "is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985) (citation, internal quotation marks, and alterations omitted).  When considering a bankruptcy appeal, the district court is not "authorized to make independent factual findings; that is the function of the bankruptcy court."  *Equitable Life Assurance Soc'y v. Sublett (In re Sublett)*, 895 F.2d 1381, 1384 (11th Cir. 1990).  "If the bankruptcy court's factual findings are silent or ambiguous as to an outcome determinative factual question, the district court must remand the case to the bankruptcy court for the necessary factual determination."  *Id.* (citation, internal quotation marks, and alterations omitted).

## IV.  DISCUSSION

### A.    <u>Introduction</u>

Pursuant to § 523(a)(8), student loans presumptively are nondischargeable in bankruptcy.  *In re Mosley*, 494 F.3d at 1324.  There is a narrow exception when failing to discharge the student loans in bankruptcy would "impose an undue hardship on the debtor and the debtor's dependents."  § 523(a)(8); (*see also* Doc.

10

# 1-3, at 6 (explaining that "[t]his undue hardship provision is actually an exception to an exception").)  Congress enacted § 523(a)(8) amid reports that students were abusing the fresh start policy of the bankruptcy code by filing for bankruptcy and then seeking discharge of their student loans after graduation.  *Educ. Credit Mgmt. Corp. v. McLeroy (In re McLeroy)*, 250 B.R. 873, 878 (N.D. Tex. 2000).  Congress added subsection 8 "in order to protect the United States Treasury, as well as to protect the solvency of the guaranteed student loan program."  *Id.*; *see also In re Pelkowski*, 990 F.2d 737, 743 (3d Cir. 1993) ("[T]he debate in the main focused on the twin goals of rescuing the student loan program from fiscal doom and preventing abuse of the bankruptcy process by undeserving debtors.").

Amendments to § 523(a)(8) over the years increasingly have limited debtors' abilities to discharge student loans and have clarified "that Congress intended to make it difficult for debtors to obtain a discharge of their student loan indebtedness." *In re Cox*, 338 F.3d at 1243; *see also Brunner*, 831 F.2d at 396 (noting "clear congressional intent . . . to make the discharge of student loans more difficult than that of other nonexcepted debt").

While § 523(a)(8) does not define "undue hardship," the Eleventh Circuit has adopted the three-part *Brunner* test as the standard for such a determination.[6]  *In re Cox*, 338 F.3d at 1241.  The debtor has the burden to show all three parts by a

---

[6] The *Brunner* elements are set out *supra* in Part II.B.

11

preponderance of the evidence. *See In re Mosley*, 494 F.3d at 1324; *see also Brightful v. Penn. Higher. Educ. Assistance Agency (In re Brightful)*, 267 F.3d 324, 327–28 (3d Cir. 2001) ("If one of the elements of the [*Brunner*] test is not proven, . . . the student loans cannot be discharged.").

Adopting the *Brunner* test, the Eleventh Circuit determined that the test "is an effective tool in analyzing" undue hardship, which it defined as "not the mere inability to pay, but an inability to pay that is likely to continue for a significant time." *In re Cox*, 338 F.3d at 1242. It disagreed with the contention that the test produces "harsh and sometimes absurd results," noting that

> [t]he government is not twisting the arms of potential students. The decision of whether to borrow for a college education lies with the individual; absent an expression to the contrary, the government does not guarantee the student's future financial success. If the leveraged investment of an education does not generate the return the borrower anticipated, the student, not the taxpayers, must accept the consequences of the decision to borrow.

*Id.* (quoting *In re Roberson*, 999 F.2d 1132, 1137 (7th Cir. 1993)).

The Third Circuit has opined that the *Brunner* test is to be "strictly construed: equitable concerns or other extraneous factors not contemplated by the test may not be imported" into the undue hardship analysis. *In re Brightful*, 267 F.3d at 328. And the Eleventh Circuit has echoed that "there is no evidence of an intent to permit judicially created exceptions to § 523(a)(8) via the 'fresh start' principle." *In re Cox*, 338 F.3d at 1243.

ECMC disputes the finding of undue hardship.   ECMC asserts that the bankruptcy court erred in finding that Conniff had met each of the three elements of the *Brunner* test and consequently erred in its ultimate conclusion of undue hardship. (Doc. # 11, at 2.)   For the reasons that follow, Conniff fails to sustain her burden under the second element of the *Brunner* test and is not entitled to a discharge of her student-loan debt.   It is unnecessary, therefore, to address the first and third elements.[7]   Before discussing *Brunner*'s second prong, the court will comment on ECMC's general argument that the bankruptcy court misapplied the *Brunner* standard by giving undue weight to the discharge policies that preceded the 1998 amendments to § 523(a)(8).

## B.    History of Student Loan Dischargeability

The bankruptcy court relayed the history of the dischargeability of student loans beginning with the first exception to the discharge of such debts in 1977.  (Doc. # 1-3, at 6–7.)  It highlighted that *Brunner* and other similar landmark cases preceded the 1998 amendments by which Congress eliminated time-based restrictions for

---

[7] Because this appeal resolves on the *Brunner*'s second element, it is unnecessary to determine (1) whether under *Brunner*'s first element a remand would be required for further factual findings on the reasonableness and necessity of Conniff's expenses and for consideration of Conniff's eligibility for the ICRP, *see Wieckiewicz v. Educ. Credit Mgmt. Corp.*, 443 F. App'x 449, 451 (11th Cir. 2011) ("Wieckiewicz's eligibility under the [ICRP] would play a substantial role in whether he would be able to show undue hardship under *Brunner*.") or (2) whether under *Brunner*'s third element, Conniff has met her burden of proof to demonstrate good-faith efforts to repay the loans.

dischargeability and opined that "[a] denial of discharge of a student loan then was not a life sentence of nondischargeability, as it is now." (Doc. # 1-3, at 8.) It concluded its historical analysis by determining that

> what one may consider to be an undue hardship where a debtor is required to pay a debt of a few thousand dollars, which may ultimately be discharged in five or seven years, may be quite different than what one may consider to be an undue hardship of a debt in the amount of $100,000 or more, which will not discharge for the life of the debtor.

(Doc. # 1-3, at 8; *see also* Doc. # 2-11, at 77 (observing that the elimination of the statutory time-based restrictions for dischargeability is a "significant factor . . . to be considered").)

The bankruptcy court identified the *Brunner* test as the governing standard in the Eleventh Circuit. (Doc. # 1-3, at 9.) It is not entirely clear, though, whether the bankruptcy court's ultimate conclusion of undue hardship credited Congress's 1998 tightening of the reigns on the dischargeability of student-loan debts or whether the conclusion sought to provide an equitable escape from a perceived "life sentence" of debt. (Doc. # 1-3, at 8.) As noted in *In re Cox*, the Eleventh Circuit rejected the argument that *Brunner*'s test rendered unduly severe results in light of the subsequent 1998 amendments to § 523(a)(8). It recognized that "Congress's intent to make it harder for a student to shift his debt responsibility onto the taxpayer is clear from the 1998 amendments." 338 F.3d at 1242.

14

Review of the bankruptcy court's analysis of *Brunner*'s second element will be conducted without taking into account equitable considerations.

## C.   Additional Circumstances

The second element of the *Brunner* test requires that additional circumstances exist such that the debtor's present inability to repay the student loan and maintain a minimal standard of living "'is likely to persist for a significant portion of the repayment period of the student loans.'"  *In re Cox*, 338 F.3d at 1241 (quoting *Brunner*, 831 F.2d at 396).  "Requiring evidence not only of current inability to pay but also of additional, exceptional circumstances, strongly suggestive of continuing inability to repay over an extended period of time, more reliably guarantees that the hardship presented is 'undue.'"  *Brunner*, 831 F.2d at 396.  Hence, the second factor "clearly reflects the congressional imperative that the debtor's hardship must be more than the normal hardship that accompanies any bankruptcy."  *Educ. Credit Mgmt. Corp. v. Frushour* (*In re Frushour*), 433 F.3d 393, 401 (4th Cir. 2005).

As one bankruptcy court in this circuit has commented, "The Eleventh Circuit has not provided clear guidance on applying [*Brunner*'s] prong two other than to embrace the 'certainty of hopelessness' standard."  *Williams v. Am. Educ. Serv. (In re Williams)*, 492 B.R. 79, 87 (Bankr. M.D. Ga. 2013) (quoting *In re Mosley*, 494 F.3d at 1326).  In *Mosley*, the Eleventh Circuit cited approvingly the Third Circuit's portrayal of the second *Brunner* element as requiring the debtor to show that "there

15

is a 'certainty of hopelessness' that [he or she] will be able to repay the loans within the repayment period." *In re Mosley*, 494 F.3d at 1326 (quoting *In re Brightful*, 267 F.3d at 328). Other circuits also have addressed *Brunner*'s second prong.

In *Brightful*, the Third Circuit opined that the debtor "must prove 'a total incapacity . . . in the future to pay [her] debts for reasons not within [her] control,'" and it emphasized that the second *Brunner* element is "a demanding requirement." 267 F.3d at 328 (quoting *Penn. Higher Educ. Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298, 307 (3d Cir. 1995)). Additionally, the Ninth Circuit, while not foreclosing the possibility that there could be circumstances within the debtor's control that qualify as additional circumstances, explained that "the debtor cannot purposely choose to live a lifestyle that prevents her from repaying her student loans. Thus, the debtor cannot have a reasonable opportunity to improve her financial situation, yet choose not to do so." *Educ. Credit Mgmt. Corp. v. Nys (In re Nys)*, 446 F.3d 938, 946 (9th Cir. 2006). But "[a]t the same time," the debtor is not at fault "for having made reasonable choices that now inhibit her ability to substantially increase her income in the future."[8] *Id.*

---

[8] Some courts also have interpreted *Brunner*'s second element to include only a circumstance that affects the debtor's future earning potential that "was either not present when the debtor applied for the loans or has since been exacerbated." *Douglas v. Educ. Credit Mgmt. Corp.*, *(In re Douglas)*, 366 B.R. 241, 257 (Bankr. M.D. Ga. 2007) (citation, internal quotation marks, and emphasis omitted). ECMC advocates this position; however, on this record, it is unnecessary for purposes of this appeal to determine whether the additional circumstances *must* post-date the student loans to qualify under *Brunner*.

Against the foregoing backdrop of legal principles, ECMC argues that Conniff has not presented additional circumstances that render it virtually hopeless that she will be able to repay her loans within the repayment period.  (Doc. # 11, at 29–32.) The court agrees that Conniff has not satisfied her burden under *Brunner*'s second element.

The bankruptcy court's written decision does not identify specifically any "additional circumstances" but concludes generally that, "[b]ased upon Conniff's testimony, there is nothing in her circumstances which is likely to change in the future." (Doc. # 1-3, at 13.)  At trial, however, the bankruptcy court highlighted that, in Conniff's present job as an Alabama public-school teacher, her salary is not likely to increase during a significant portion of the repayment period.  (*See, e.g.*, Doc. # 2-11, at 78, in which the bankruptcy court observed that the "State of Alabama does not pay its teachers very well" and does not "pay much premium for the additional degrees" and took notice that "at least in the near future it's unlikely that teachers' pay is going to increase in the State of Alabama very much").  Conniff, echoing the bankruptcy court, contends that her salary cap in the Eufaula public-school system is pivotal in the analysis of *Brunner*'s second element.  More specifically, Conniff argues that she has shown additional circumstances because she has reached the peak of her pay in her present position, she is unlikely to find a higher-paying job in the

17

same geographical area, and her tenured status and family support make it financially impracticable for her to look for work outside her school district.

Even assuming as true a general premise that, in the State of Alabama, a public-school teacher with advanced degrees is undercompensated and lacks significant potential for pay increases, that premise is insufficient to sustain Conniff's burden of proving the additional circumstances prong of the *Brunner* "undue hardship" test for several reasons.  Conniff's student loans have financed her advanced degrees, which undisputedly have enabled her to earn more income than she could have earned without the degrees.  Although she is not satisfied with the pay the advanced degrees ultimately have yielded, Conniff chose to earn four degrees, funded primarily by student loans, in her preferred career path of education with a general understanding of the benefits she would obtain from the degrees versus the costs.  She admits specifically that she decided to obtain another student loan to earn her pinnacle Ph.D. in special education and agreed to repay it, knowing how the cost of the Ph.D. compared with the increase in pay it would provide.  (Doc. # 2-11, at 31.)  Conniff finds herself in circumstances largely of her own informed decision-making, which although not dispositive, is a consideration.  *See In re Brightful*, 267 F.3d at 328.

Other courts in persuasive opinions similarly have rejected arguments that additional circumstances exist when the debtor contends that he or she is trapped in

18

a career choice that lacks significant future earning potential.  In *Matthews-Hamad v. Educational Credit Management Corp. (In re Matthews-Hamad)*, 377 B.R. 415 (Bankr. M.D. Fla. 2007), for instance, the bankruptcy court found that the debtor had not shown additional circumstances, even though her $30,445 salary was "at the top of her profession" and she was unlikely to find a higher-paying job in her field that offered the flexible schedule she needed to care for her disabled daughter.  *Id.* at 422. It found that "the fact that a debtor has a low-paying job without much upside earning potential is not enough to satisfy th[e second] prong of the *Brunner* test."  *Id.* (citing, among other cases, *Frushour*, 433 F.3d at 401, for *Frushour*'s conclusion that, "'[h]aving a low-paying job . . . does not in itself provide undue hardship' where debtor was voluntarily employed in her preferred field as decorative painter"); *see also U.S. Dep't of Educ. v. Gerhardt (In re Gerhardt)*, 348 F.3d 89, 93 (5th Cir. 2003) (stating that "nothing in the Bankruptcy Code suggests that a debtor may choose to work only in the field in which he was trained, obtain a low-paying job, and then claim it would be an undue hardship to repay his student loans").

Additionally, although the concerns Conniff raises about losing tenure and family support if she leaves the geographical area for a higher-paying job are understandable, her decision to stay in the area also is one she made of her own volition after measured deliberations.  Again, as she testified, she incurred additional student loan debt to acquire a Ph.D., knowing the approximate salary increase she

19

would obtain with the advanced degree if she chose to remain in the same school district and knowing the indirect financial savings she would receive by leaning on friends and family in the area to assist with childcare and other expenses. Relatedly, to the extent that her decision to remain in the same school district is tied principally to the financial savings her family provides for the care of her dependent sons, Conniff has not shown that childcare expenses will persist for a significant portion of the fifteen-year repayment period, given that at the time of the adversary proceeding her sons were ages fourteen and sixteen.[9]

The bankruptcy court found, though, that "much of the [future] savings from the emancipation of [Conniff's] children" will be offset by the cessation of child support payments (Doc. # 1-3, at 13). This finding is clearly erroneous. Conniff provided limited evidence of how much she spends on her children per month. There is testimony, but little more than this, that Conniff pays $300 a month for lunches for her children and herself, $222 for family health insurance, a Verizon payment ranging from $134 to $278 that covers cell phone service and a data plan for three iPhones, and around $100 quarterly for life insurance policies on her sons. This evidence does not permit an informed weighing of Conniff's future childcare savings against the $500 monthly child support payment she receives. Conniff's failure to

---

[9] It is notable also that Conniff has presented no reason that would preclude her healthy teenaged sons from helping relieve some of the financial strain, for example, by taking over the lawn chores.

provide an adequate evidentiary record on this point required the bankruptcy court to have to speculate as to the amount of child-related costs she incurs and thus will eventually save.  She has failed to present evidence to support a finding that, in the calculus of predicting future income, the termination of child support is "likely [to] offset[ ] much of the savings from the emancipation of her children."  (Doc. # 1-3, at 13); *cf. Educ. Credit Mgmt. Corp. v. Carter*, 279 B.R. 872, 874, 878 (M.D. Ga. 2002) (no undue hardship where the debtor failed to show that her childcare costs were likely to remain the same in the future).

Furthermore, Conniff's future ability to earn extra income to repay her educational loans is not bleak.  *See In re Frushour*, 433 F.3d at 401 ("While [the debtor's present financial condition is certainly not desirable, the second *Brunner* factor is prospective in nature and looks for exceptional circumstances beyond the debtor's current situation.").  Conniff has acknowledged that additional sources of income will be easier to pursue when her sons are emancipated.  In particular, the unspecified costs for childcare and "eating out" that Conniff incurs for working extra jobs, which include providing translations for the board of education and working as an adjunct professor in Montgomery, will diminish as her teenaged sons age.  (Doc. # 2-11, at 16); *see In re Frushour*, 433 F.3d at 402 (Since the second *Brunner* element "looks to the future, it is not implausible to think that [the debtor's] childcare costs will drop as her child progresses in school.").  Additionally, Conniff's testimony

21

establishes that annual pay raises, even if in her opinion they are small, are not foreclosed and that she will receive step increases in pay every three years.  Her testimony demonstrates also that there are higher-paying jobs available in school administration within her district for which her advanced degrees render her qualified.  (*See* Doc. # 2-11, at 40–41.)  There is no evidence that she is precluded from applying again for future openings.  These opportunities show a prospect for increased income in the future.  *In re Mallinckrodt*, 274 B.R. 560, 567–58 (S.D. Fla. 2002) (finding that, under *Brunner*'s second element, the debtor "has the burden to prove that he cannot earn more money in the years to come," *id.* at 567, and that the debtor had not demonstrated additional circumstances because he had future "opportunities to earn more income," *id.* at 568).

Finally, a comparison of Conniff's circumstances against those the debtor in *Mosley* faced further illustrates why Conniff has failed to show "a certainty of hopelessness that [she] will be able to repay the loans within the repayment period." *In re Mosley*, 494 F.3d at 1326 (internal citations and quotation marks omitted).  The *Mosley* debtor amassed $45,000 in student debt for college, but was unable to graduate or perform manual labor jobs after he suffered serious injuries in an accident.  He later was committed to a mental health facility, diagnosed with depression and anxiety, and prescribed medications that rendered "him unable 'to function.'"  *Id.* at 1323.  His circumstances worsened; he became homeless, had no

22

automobile, and survived on food stamps and disability benefits. The Eleventh Circuit held that "Mosley's evidence of medical problems, lack of skills, and dire living conditions support[ed] the bankruptcy court's finding that it is highly unlikely he will become able to repay his loans." *Id.* at 1326–27.

Conniff's circumstances stand in stark contrast to the certain hopelessness the debtor in *Mosley* faced. Notwithstanding her medical conditions, Conniff has been able to maintain steady full-time employment, earning nearly $60,000 annually at the time of her adversary proceedings, and there is no indication that she will not retain her tenured job, with the potential for some salary raises, should she choose to remain in her school district.[10] Moreover, unlike the debtor in *Mosley*, Conniff holds multiple marketable degrees. She graduated from college with a bachelor's degree, holds two master's degrees, and has earned her Ph.D. She has a roof over her head, an automobile, and food for the table. Her circumstances do not qualify as "additional" within the meaning of *Brunner*'s second element.[11]

---

[10] It is notable that, although not a dispositive factor, Conniff's professional job earns her more than the median income in her area. FY 2015 HUD Income Limits show that the median income for a family of four in rural Alabama is $48,500. U.S. Dep't of Hous. & Urban Dev. Office of Policy Dev. & Research, *FY 2015 HUD Income Limits Briefing Material*, 38 (Mar. 10, 2015), http://www.huduser.gov/portal/datasets/il/il15/index.html. The median income for a family of three in rural Alabama is $43,650. *See id.* at 9 (indicating that the percentage adjustment for a family of three is 90%).

[11] Courts have found that debtors did not establish additional circumstances in situations more dire than the circumstances Conniff endures. These decisions show that courts give little weight to present hardships in assessing a debtor's future prospects and ability to pay. *See Spence v. Educ. Credit Mgmt. Corp. (In re Spence)*, 541 F.3d 538, 544 (4th Cir. 2008) (finding no additional circumstances despite debtor's low-paying job and her diabetes and high blood pressure

## V.  CONCLUSION

Although Conniff admittedly finds herself in undesirable financial difficulties, she ultimately must bear the consequences of her decision to obtain loans in order to pursue her multiple educational goals.  *See In re Cox*, 338 F.3d at 1242 ("If the leveraged investment of an education does not generate the return the borrower anticipated, the student, not the taxpayers, must accept the consequences of the

---

because the ailments did not affect her ability to work full-time and the low-paying job was the choice of the debtor, as she had a master's degree and had completed Ph.D. course work, which would have allowed her to seek higher-paying employment); *Tirch v. Penn. Higher Educ. Assistance Agency (In re Tirch)*, 409 F.3d 677, 681–82 (6th Cir. 2005) (determining that the debtor had failed to show how her condition prevented her from working and thus had failed to establish additional circumstances, even though she was not currently employed and testified that she did not know when or if she would be able to return to work); *In re Brightful*, 267 F.3d at 330 (overturning bankruptcy court's finding of additional circumstances based on emotional and psychiatric problems of the debtor because there was no indication of how these problems kept her from being "gainfully employed"; determining that because the debtor was "intelligent, physically healthy, currently employed, possess[ing] useful skills as a legal secretary, and [had] no extraordinary, non-discretionary expenses," she failed to satisfy the burden of showing additional circumstances); *Ng-A-Qui v. Coll. Assist (In re Ng-A-Qui)*, No. 14-1551, 2015 WL 5923363, at *8 (9th Cir. B.A.P. 2015) (affirming bankruptcy court's finding of no additional circumstances because, although the debtor was currently unemployed, she was "healthy, well-educated, and well-spoken"; the court also noted that the debtor had made only two attempts to secure employment since 2012); *Trudel v. U.S. Dep't of Educ. (In re Trudel)*, 514 B.R. 219, 228 (6th Cir. B.A.P. 2014) (affirming bankruptcy court's finding of no additional circumstances because the debtor failed to establish that her medical issues prevented her from improving her financial condition, even though her medical issues prevented her from working more than thirty-two hours a week); *Educ. Credit Mgmt. Corp. v. Boykin (In re Boykin)*, 313 B.R. 516, 522–23 (M.D. Ga. 2004) (rejecting bankruptcy court's conclusion that additional circumstances existed where the debtors did not have a college degree or marketable skills above a minimum wage level, debtors had two young children, one debtor had back problems, and one debtor had dysgraphia; the district court did not find these circumstances to be "unique" or "extraordinary" but reversed the decision on other grounds); *In re Mallinckrodt*, 274 B.R. at 567–68 (reversing decision of the bankruptcy court that additional circumstances existed, because although the debtor had not been able to earn money in the past, he had potential sources of income and he had not proven "significant barriers" to such gainful employment).

24

decision to borrow."). She has failed to show that her purported "inability to pay [is] likely to continue for a significant time, such that there is a certainty of hopelessness that [she] will be able to repay the loans within the repayment period." *In re Mosley*, 494 F.3d at 1326 (internal citations and quotation marks omitted). Accordingly, the bankruptcy court erred in concluding that Conniff met her burden of establishing the second *Brunner* element; therefore, its ultimate conclusion that Conniff's student loan debt was dischargeable under § 523(a)(8) must be reversed.

It is ORDERED that the bankruptcy court's March 25, 2015 judgment is REVERSED and that this action is REMANDED to the bankruptcy court for an entry of judgment in favor of Appellant ECMC.

A final judgment will be entered separately.

DONE this 2nd day of May, 2016.

/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE
